UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| MINNESOTA LAWYERS MUTUAL INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No: 3:09cv432 ) |
| TERRENCE R. BATZLI, ET AL., | ) ) ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT FOR TERRENCE R. BATZLI AND BATZLI WOOD & STILES, P.C.**

**INTRODUCTION**

Terrence R. Batzli and Batzli Wood & Stiles, P.C. (collectively "Batzli") are insured under a Lawyers Professional Liability Policy issued by Minnesota Lawyers Mutual Insurance Company ("MLM"). Batzli represented Richard J. Chasen ("Chasen") in divorce proceedings. During this representation, Batzli made a drafting error in a draft of a property settlement agreement dated January 11, 2006. It was not until Batzli received a January 8, 2009 letter from Chasen's counsel that Batzli knew or should have known about this alleged claim for damages. Batzli notified MLM six days later in a January 14, 2009 letter. The undisputed material facts demonstrate that prior to the January 8, 2009 letter from Chasen's counsel, Batzli did not have knowledge of facts which a reasonable practitioner could reasonably foresee a claim for damages. Thus, Batzli is entitled to summary judgment and MLM should defend and indemnify Batzli in the lawsuit filed by Chasen. In addition, the "Claims Made" provisions in the MLM policy are ambiguous and should be construed in favor of Batzli.

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

1.  MLM issued a Lawyers Professional Liability Policy, Policy No. 19336-05, for the policy period of October 1, 2008 to October 1, 2009 to Batzli. Terrence R. Batzli is an individual insured under the Policy. A copy of the Policy has been previously attached as Exhibit A to MLM's Motion for Summary Judgment.

2.  Terrence R. Batzli is an attorney licensed to practice law in Virginia since 1975. He graduated from University of Richmond Law School in 1975. Since around 1993, his practice has focused exclusively on domestic relations law. He has been a Fellow in the American Academy of Matrimonial Lawyers since 1998. See attached Affidavit of Terrence R. Batzli, Exhibit 1, at ¶ 1.

3.  In or around November of 2004, Batzli began representation of Chasen in his divorce from Karen S. Chasen ("Mrs. Chasen"). See Affidavit of Batzli at ¶ 2.

4.  During the property settlement negotiations, Chasen advised Batzli that he would like to try to obtain Mrs. Chasen's 20% interest in Chasen Properties, LLC ("Chasen Properties") as part of an overall property settlement agreement. Chasen already owned 20% of Chasen Properties and their three children each owned 20% of Chasen Properties. See Affidavit of Batzli at ¶ 3.

5.  Chasen informed Batzli that Chasen Properties was not separate property, but marital property. The Richmond Circuit Court, where the Chasen divorce case was filed, had jurisdiction for the purposes of dividing marital property, not separate property. Va. Code § 20-107.3(A)(1)(1950, as amended). After the Property Settlement Agreement was signed, Batzli was advised later by Chasen that Mrs. Chasen's 20% interest had been gifted to her during the

marriage. Gifted property is separate property and not subject to distribution in equitable distribution actions. See Affidavit of Batzli at ¶ 4.

6. During negotiations in the case, there was a series of letters exchanged between Batzli and Murray Janus, counsel for Mrs. Chasen. These letters are attached as Exhibit B to the Batzli Affidavit. Based on these letters, Batzli had assumed that Mrs. Chasen would agree to relinquish her 20% interest in Chasen Properties to Chasen. See Affidavit of Batzli at ¶ 5.

7. When Batzli drafted the Agreement, he wrote in paragraph 17(a) that it was agreed that Chasen shall retain "His interest in Chasen Properties, LLC." Batzli meant to write the word "Their" rather than "His." See Affidavit of Batzli at ¶ 6 and attached Exhibit C.

8. After Batzli completed a draft of the Agreement, he gave it to Chasen to read and approve before Chasen signed it. Chasen signed the Agreement on January 11, 2006. See Affidavit of Batzli at ¶ 6.

9. After the Agreement was signed, it was brought to Batzli's attention that he wrote the "His" rather than the word "Their." In a March 20, 2006 letter, Murray Janus, counsel for Mrs. Chasen, advised Batzli that Mrs. Chasen had never agreed at any time that she would give her 20% interest to Chasen. See Affidavit of Batzli at ¶ 7 and attached Exhibit D.

10. Batzli advised Chasen of the wording in the Agreement and they discussed various options. One option discussed was to move the court to set aside the Agreement. Chasen advised Batzli that he did not want to have the Agreement set aside or voided or risk such happening because he thought the Agreement was overall very favorable toward him, even without his wife's 20% interest in Chasen Properties. See Affidavit of Batzli at ¶ 8.

11. Batzli advised Chasen that another option would be to make an argument that there was a scrivener's error in the Agreement under Virginia Code § 8.01-428(B), but that there

3

was no guarantee that this Agreement would be successful. Batzli advised Chasen of the fact that neither Mrs. Chasen nor her attorney, Murray Janus, had ever explicitly said to him, or to his knowledge, to anyone that Mrs. Chasen agreed at any time to give up her 20% interest in Chasen Properties to Chasen. See Affidavit of Batzli at ¶ 8.

12. With this knowledge, Chasen said he understood and that he was satisfied with the situation and agreeable to the plan. Chasen decided to proceed with the scrivener's error argument. Again, Chasen made it very clear to Batzli that he did not want to risk in any way having the Agreement voided or set aside and that he thought he fared well with the property settlement even if he lost the scrivener's error argument. See Affidavit of Batzli at ¶ 8.

13. Once the scrivener's error argument was made to the Court, Mrs. Chasen's immediate reply was "that she never agreed to give up her interest in Chasen Properties." See Plaintiff's Response to Defendant's Motion Requesting Court to Correct Scrivener's Error Pursuant to Virginia Code § 8.01-428(B), attached, as Exhibit E to Batzli's Affidavit. In a letter opinion dated December 20, 2006, Judge Melvin Hughes of the Richmond Circuit Court agreed with Mrs. Chasen and held that "the parties did not come to a meeting of the minds regarding Chasen Properties." See Affidavit of Batzli at ¶ 9 and attached Exhibit F.

14. The opinion by Judge Hughes was upheld by the Virginia Court of Appeals in a May 28, 2008 opinion. The Virginia Court of Appeals held that "There was no evidence in this record to suggest a meeting of the minds (i.e. a contract—offer and acceptance) over wife's relinquishment of her interest in Chasen Properties." Batzli, on behalf of Chasen, made a good faith argument for a scrivener's error at Chasen's direction, but the argument was not successful. See Affidavit of Batzli at ¶ 9 and attached Exhibit G. The Virginia Court of Appeals confirmed as a matter of law that Chasen had no contractual right to Mrs. Chasen's 20% interest.

15. Once the final decision by the Virginia Court of Appeals had been made as to the scrivener's error argument, Chasen accepted the Court's ultimate decision and was pleased with the overall result. Once all the issues were finally resolved, Chasen thanked Batzli for his help, paid all of the outstanding legal bills, and the matter was closed. See Affidavit of Batzli at ¶ 9.

16. According to Batzli, from the time he first began representing Chasen and throughout the entire representation, Chasen never hinted or indicated in any way that he ever had or would ever make any type of claim for any reason against Batzli or the law firm. It was not until Batzli received a January 8, 2009 letter from Chasen's attorney, Thomas Roberts, that Batzli had any clue that Chasen was going to make a claim for damages. Once Batzli received Mr. Roberts' letter and Complaint, he gave notice to MLM six days later pursuant to a January 14, 2009 letter to Debbie Toberman at MLM. MLM denied coverage due to late notice in a February 13, 2009 letter. See Affidavit of Batzli at ¶ 10 and Exhibits H, I, J and K.

17. Thomas Roberts wrote a February 11, 2009 email to Danny Howell of Sands Anderson Marks & Miller in which Mr. Roberts stated "Since no claim or hint of claim was made by or on Chasen's behalf until suit was filed in this matter, I am obviously curious to learn the basis for coverage denial." See Affidavit of Batzli at ¶ 11 and attached Exhibit L.

18. Batzli, in his Affidavit, states that "Based on Chasen's statements and behavior and the facts as set forth in this Affidavit, I could not reasonably anticipate that Chasen would have a claim or make a claim for damages against me or my firm. I was completely surprised when I received Mr. Robert's January 8, 2009 letter." See Affidavit of Batzli at ¶ 12.

5

## STANDARD ON SUMMARY JUDGMENT

To grant a Motion for Summary Judgment, the Court must find that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(c).

The Fourth Circuit Court of Appeals has specifically found that "Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law." Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006); see Ash v. UPS, 800 F.2d 409, 411-12(4th Cir. 1986)(per curiam)([U]nsupported speculation...is not sufficient to defeat a summary judgment motion.") Nor can the nonmoving party "create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 231,214 (4th Cir. 1985).

## LAW AND ARGUMENT[1]

### I. MLM OWES A DUTY TO DEFEND AND INDEMNITY

The case of Commercial Underwriters Ins. Co. v. Hunt & Calderone, 261 Va. 38, 540S.E.2d 491 (2001) is instructive on the issue of notice and shows that simply making a drafting error is not sufficient to make an insured aware of a potential claim. That case involved an accounting firm's failure to notify its malpractice carrier of a missed deadline which eventually caused the firm's client to lose a $125,000.00 tax credit. Similar to case at bar, the Hunt & Calderone case involved a "claims-made" policy which excluded coverage for "any claim arising out of any actual or alleged act, error, omission, Personal Injury or circumstance likely to give rise to a claim of which an Insured had knowledge, or otherwise had reason to

---

[1] Many of the arguments here are similar or identical to the ones made in Defendants' Memorandum in Opposition to MLM's Motion for Summary Judgment which is incorporated herein by reference as if set out in full.

anticipate might result in a claim, prior to the inception of this policy." Although the missed deadline occurred prior to the effective date of the policy, the firm did not notify the insurer of the event until the firm's client made a formal demand on the firm, several months later. The Virginia Supreme Court upheld the trial court's ruling that the insured did not breach the notice provisions of the policy. This ruling was based largely on the fact that the insured reasonably believed that, despite the error, no claim would arise out of the missed deadline:

> David E. Hunt, a partner in H&C [the accounting firm], and Calderone, both of whom are certified public accountants and testified in that capacity, stated that Calderone's error was not one which could reasonably be anticipated to result in a claim because the assurances by one of the tax credit program's administrators, Dan Girouard, justified a conclusion that funds would be available for Atalay despite the untimely filing of the application. Atalay [who sued H&C] also testified at trial that, although he was aware of Calderone's error, after talking with Calderone and Girouard, he believed the matter "would be okay." Atalay stated that he had no intention of filing a claim against [H&C] until July, when he learned that tax credits would not be available to him.

540 S.E.2d at 494. Holding that the insurance company did not meet the ultimate burden of proof, the Virginia Supreme Court found that the trial court was correct that the insurance company "simply failed to satisfy that burden." Likewise, in the case at bar, MLM has failed to meet its burden under the undisputed material facts of this case. As a matter of law, the undisputed material facts demonstrate that Batzli did not have knowledge of facts which could reasonably support a claim for damages.

It is clear that an attorney does not have to report every error or mistake to a malpractice carrier. If so, attorneys would have to make calls or write letters to their carriers on practically a daily basis. Thus, most malpractice policies, including the MLM policy, do not require every error to be reported. The MLM policy only requires reporting to MLM when there are facts that **reasonably** could support a claim for damages. Based on the undisputed facts in this case, under

7

an objective standard, Batzli did not have a reasonable basis to believe that Chasen had a supportable claim for damages. The fact is that the Batzli drafting error did not cause Chasen to lose a 20% interest in Chasen Properties. Without proximate cause and damages, there can be no claim.

The case of Hazel & Thomas v. Yavari, 251 Va. 162, 465 S.E.2d 812 (1996) is on point. In Yavari, the purchaser, Yavari, sued his attorney for drafting errors in a contract purchasing commercial property from James Kline. Due to disagreements, Yavari refused to close on the property and Kline then evicted Yavari from the premises, retained a $1,000,000.00 deposit, and sued Yavari to recover additional damages for failure to close on the contract. Yavari then brought suit against his attorney for damages due to alleged drafting errors. The Virginia Supreme Court held that judgment should be entered in favor of the attorney as a matter of law because there was insufficient proof that the drafting errors were the proximate cause of any damages. The Court stated:

> When, however, the evidence is such that reasonable minds could not differ as to the outcome, the issue of proximate cause should be decided by the court, not the jury. This rule applies equally in attorney malpractice cases, in which **the client bears the ultimate burden of producing evidence that the attorney's negligence proximately caused the client's loss.** Thus, Yavari had the burden of showing either that Kline would have agreed to include the above listed provisions in the contract or that Yavari would not have signed the contract if Kline had refused to include them. (Emphasis added)
>
> ***
>
> Accordingly, we conclude that Yavari has failed to introduce sufficient evidence that his former attorneys' purported negligence was a proximate cause of his loss. Therefore, we will reverse the judgment of the circuit court and enter final judgment for Batzli.

485 S.E.2d at 815.

Likewise, in the case at bar, there is no evidence that Batzli's drafting error was the proximate cause of any damage to Chasen. Mrs. Chasen nor her attorney had ever specifically stated at any time that Mrs. Chasen would give up her 20% interest in Chasen Properties to Chasen. Batzli had simply assumed that she had through a series of letters with her attorney. However, the Virginia Court of Appeals ultimately ruled as a matter of law that Mrs. Chasen had never agreed to give Chasen her 20% interest in Chasen Properties. Thus, once the Virginia Court of Appeals had ruled, it was even more obvious that the drafting error was not the proximate cause of Chasen not getting Mrs. Chasen's 20% interest. Since Mrs. Chasen never agreed to give up her 20% interest to Chasen, she would not have signed an agreement doing so. Thus, there could be no claim for damages against Batzli. To put it another way, Mrs. Chasen's 20% interest in Chasen Properties was her separate property. This property was not part of the marital estate and the Court had no power to transfer the property to Chasen. Va. Code § 20-107.3(A)(1)(1950, as amended). Mrs. Chasen's testimony was stipulated that she did not agree to transfer the property to Chasen and the Virginia Court of Appeals agreed. Accordingly, Chasen did not suffer a loss or damages and had no claim. In short, Batzli could not be legally liable to Chasen for losing something that Chasen never had in the first place and had no right under the law to receive.

All of the material undisputed facts demonstrate that Batzli could not have reasonably foreseen that his actions would be the basis of a claim for damages. Once Batzli and Chasen discussed the wording of the Agreement, after the drafting error was known, Chasen said that he was satisfied with the situation and agreeable to a plan to argue a scrivener's error. Chasen requested Batzli to proceed with the scrivener's error argument, and expressed that he was satisfied and happy with the Agreement, even without his wife's 20% interest in the property.

Once the Virginia Court of Appeals confirmed that there was no scrivener's error and no meeting of the minds as to Mrs. Chasen's 20% interest, Chasen accepted the court's decision and said he was pleased with the ultimate result. Chasen thanked Batzli for his help and representation and paid all of Batzli's bills. It was not until almost three years after the Agreement had been signed that Batzli received a letter from Chasen's attorney making a claim for damages. Until that point, all indications from Chasen were that he was pleased with the overall result achieved.

It is interesting and revealing to note that MLM states in its Memorandum in Support for Summary Judgment at No. 8 on page 5 that it is an undisputed fact that "Chasen's spouse had agreed to relinquish all of her interests in a business entity known as Chasen Properties, LLC." That statement is not only _not_ a fact, the statement is simply incorrect. It is an error for MLM to allege that the statement is a fact. The real undisputed fact is that Chasen's spouse has maintained at all times that she NEVER agreed to relinquish to Chasen all of her interest in a business property known as Chasen Properties, LLC. It is also a fact that the Virginia Court of Appeals has ruled that Chasen's spouse NEVER agreed to relinquish to Chasen all of her interest in Chasen Properties. MLM makes this incorrect statement in its Memorandum in Support because MLM knows that without it their summary judgment motion fails and Batzli is entitled to defense and indemnity on all the allegations in the Chasen Complaint pending in Henrico Circuit Court.

## II. THE "CLAIMS MADE" PROVISIONS IN THE POLICY ARE AMBIGUOUS AND MISLEADING.

The "Claims Made" provisions upon which MLM relies to deny coverage for the Chasen Claim define "Claim" as (i) a demand to the insured for money or professional services, (ii) a lawsuit served upon the insured or (iii) "an error or omission by any insured which has not resulted in a demand for damages but which an insured knows or reasonably should know, would

support such a demand." Thus, the "Claims Made" policy defines a "Claim" to include not just demands, but occurrences. The inclusion of an "occurrence" within the definition of "claim" is incongruous and gives rise to ambiguity. The reasonable expectation of an insured under a claims made policy is that the presentation of a formal demand is what triggers the insured's responsibility to notify its insurer of the claim. By attempting to include a second trigger—requiring the insured to notify MLM not only of claims, but of occurrences—the Policy blurs the line between "claims made" coverage and "occurrence" based coverage. In this way, the Policy "refers to two or more things at the same time." Am. Reliance Ins. Co. v. Mitchell, 238 Va. 543, 385 S.E.2d 583, 585 (1989). Accordingly, the Policy is ambiguous and must be construed in favor of Batzli. Id.

## CONCLUSION

For the reasons set forth above, Defendants, Terrence R. Batzli and Batzli Wood & Stiles, P.C., by counsel, respectfully request that summary judgment be entered in their favor and that the Court enter an Order that MLM shall defend and indemnify them in the Chasen v. Batzli, et al. lawsuit and that they be awarded all costs and attorneys' fees incurred to date in defending said Chasen lawsuit.

                                    Respectfully submitted,

                                    TERRENCE R. BATZLI
                                    BATZLI WOOD & STILES, P.C.

                                    By:_____/s/_____
                                              Counsel

W. F. Drewry Gallalee, Esq. (VSB No. 20561)
dgallalee@williamsmullen.com
Harold E. Johnson, Esq. (VSB No. 65591)
hjohnson@williamsmullen.com
Williams Mullen
1021 East Cary Street
P. O. Box 1320
Richmond, VA 23218-1320
(804) 783-6460; (804) 783-6507 (Fax)
Counsel for Terrence R. Batzli and
Batzli Wood & Stiles, P.C.

## CERTIFICATE

I hereby certify that on October 5, 2009, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

    Danny M. Howell, Esq. (VSB No. 30352)
    dhowell@sandsanderson.com
    Michael T. Marr, Esq. (VSB No. 48536)
    mmarr@sandsanderson.com
    Jeffrey H. Geiger, Esq. (VSB No. 40163)
    jgeiger@sandsanderson.com
    Douglas A. Winegardner, Esq. (VSB No. 46570
    dwinegardner@sandsanderson.com
    1497 Chain Bridge Road, Suite 202
    McLean, Virginia 22101
    (703) 893-3600; (703) 893-8484 (fax)
    Counsel for Plaintiff

                                        TERRENCE R. BATZLI
                                        BATZLI WOOD & STILES, P.C.

                                        By: _____/s/_____
                                                      Of Counsel

                                        W. F. Drewry Gallalee, Esq. (VSB No. 20561)
                                        dgallalee@williamsmullen.com
                                        Harold E. Johnson, Esq. (VSB No. 65591)
                                        hjohnson@williamsmullen.com
                                        Williams Mullen
                                        1021 East Cary Street
                                        P. O. Box 1320
                                        Richmond, VA 23218-1320
                                        (804) 783-6460; (804) 783-6507 (Fax)

6910325_1.DOC