# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Richmond Division

| | |
|---|---|
| MINNESOTA LAWYERS MUTUAL INSURANCE COMPANY, ) ) ) Plaintiff, ) ) v. ) ) TERRENCE R. BATZLI, *et. al.*, ) ) Defendants. ) | Civil Action No. 3:09CV432-HEH |

## MEMORANDUM OPINION
### (Denying Plaintiff's Rule 50(b) Motion for Judgment as a Matter of Law)

This case involves a counterclaim for breach of contract brought by Terrence R. Batzli ("Batzli"), a practicing attorney, and Batzli Wood & Stiles, P.C. ("BW & S"), against Minnesota Lawyers Mutual Insurance Company ("MLM") regarding professional liability insurance coverage. Following a two day trial, a jury returned a verdict for Batzli and awarded damages of $8,400. On March 16, 2010, MLM filed a Rule 50(b) Motion for Judgment as a Matter of Law (Dk. No. 97). Both parties have submitted memoranda in support of their respective positions, and the Court heard oral argument on May 7, 2010. Because the Court must conclude that the jury's verdict had a legally sufficient evidentiary basis, MLM's Motion for Judgment as a Matter of Law will be denied.

### I. BACKGROUND

In November 2004, attorney Batzli, of the law firm BW & S, was employed to represent Richard J. Chasen ("Mr. Chasen") in his divorce from Karen Chasen ("Mrs.

Chasen"). As part of that representation, Batzli engaged in property settlement negotiations with Mrs. Chasen's attorney.[1] Prior to these negotiations, Batzli's client informed him that his main objective was to obtain Mrs. Chasen's 20% interest in Chasen Properties, LLC.[2] Acquisition of his wife's interest was critical to Mr. Chasen's goal of maintaining operational control over the family business. In a October 27, 2005 letter, Batzli proposed to Mrs. Chasen, through counsel, that she relinquish her interest in Chasen Properties, LLC, in exchange for a substantial lump sum payment (as part of the property settlement). Mrs. Chasen never responded to this proposal. Subsequently, Batzli drafted an Agreement and Stipulation ("Agreement"), which inadvertently misrepresented his client's position. Contrary to his client's instructions, the Agreement reflected that Mr. Chasen would retain only "*His* interest," instead of stating that Mr. Chasen would receive both his and Mrs. Chasen's interest. This Agreement was signed by both parties on January 11, 2006, and Mrs. Chasen received a $500,000 cash payment.

After the Agreement was signed, the drafting error was brought to Batzli's attention when Mrs. Chasen refused to convey her interest in the company. In a

---

[1] These settlement negotiations, among other things, involved a series of letters dating from August 23, 2005, to January 9, 2006, between attorneys Terrence R. Batzli and Murray Janus. Those letters, placed into evidence at trial, discussed the distribution of various assets and properties.

[2] Chasen Properties, LLC was a family business in which Mr. Chasen, Mrs. Chasen, and the three Chasen children each owned a 20% interest. Mrs. Chasen received her interest in Chasen Properties, LLC, as a gift from Mr. Chasen's family, making it separate property. The parties at the time of negotiations incorrectly considered Mrs. Chasen's interest marital property.

March 20, 2006 letter, Mrs. Chasen's attorney advised Batzli that his client neither agreed nor ever intended to relinquish her 20% interest in Chasen Properties, LLC. To remedy his error, Batzli discussed various options with Mr. Chasen. Batzli stated that one option he suggested to his client was that they could move the court to set aside the Agreement. It is undisputed that Mr. Chasen declined this option because he considered the Agreement favorable even without his wife's 20% interest in Chasen Properties. Another option given to Mr. Chasen was that he could contend that a scrivener's error was made in the drafting of the Agreement.

Chasen ultimately decided to file a "Motion to Correct Scrivener's Error" in the Circuit Court for the City of Richmond on August 24, 2006. Batzli urged the Circuit Court to replace the word "his" with the word "their," to implement what Batzli perceived to be their Agreement. The Circuit Court denied the Motion on December 20, 2006, finding no evidence in the record to support a meeting of the minds. This denial was later affirmed by the Court of Appeals of Virginia, on May 20, 2008, which rejected Batzli's contention that the flaw was a mere clerical error. Mrs. Chasen was also awarded attorneys' fees. *Chasen v. Chasen*, 2008 WL 2092260, 3-4 (Va. Ct. App. May 20, 2008). Mr. Chasen voluntarily underwrote the fees and costs necessary to prosecute the appeal and a portion of the costs associated with the suit in Circuit Court.

Several months after the Court of Appeals's decision, MLM renewed its Lawyers Professional Liability Policy (the "Policy"), policy number 19336-05, for BW & S and

Batzli. The Policy period ran from October 1, 2008 to October 1, 2009, and included coverage for any "act, error, or omission of the INSURED or a person whose acts the INSURED is legally responsible" that occurred "(1) during the POLICY PERIOD; or (2) prior to the POLICY PERIOD and on or after the PRIOR ACTS RETROACTIVE DATE,[3] if the INSURED had no knowledge of facts which could reasonably support a CLAIM at the effective date of this policy."[4] The Policy defined a claim as including "[a]n act, error or omission by any INSURED which has not resulted in a demand for DAMAGES but which an INSURED knows or reasonably should know, would support such a demand."

On January 8, 2009, Mr. Chasen filed a Complaint ("the Chasen Complaint") in the Circuit Court for the County of Henrico alleging that Batzli and BW & S breached their standard of care and professional duties while representing him in his divorce.[5] Based on Chasen's Complaint, Batzli gave notice of the claim to MLM in a January 14, 2009 letter, two and a half years after filing suit to correct the error. MLM denied coverage based on late notice on February 13, 2009.

---

[3] Individually, Batzli's prior acts retroactive date began from when he first entered the private practice of law. This provision extended his coverage to potentially include all prior acts.

[4] This language is a portion of the "Claims-Made Provisions" in the Policy.

[5] Batzli also received a letter from Mr. Chasen's new attorney with a copy of the Complaint filed in Henrico County. Mr. Chasen's new attorney claims this letter was the first indication of a possible claim for damages by Mr. Chasen, resulting from Batzli's drafting error in the Agreement.

4

On July 9, 2009, MLM filed a Complaint in this Court seeking declaratory judgment. MLM alleged that Batzli had knowledge of sufficient facts which could reasonably support a claim more than two years prior to the date of notice to MLM. MLM sought a declaration of rights that it has no duty to defend or indemnify the Defendants because they failed to satisfy the Policy's "Claims-Made Provisions." The Defendants filed a Counterclaim on August 5, 2009, for declaratory relief and breach of contract. Both parties' Cross-Motions for Summary Judgment were denied by this Court on November 4, 2009. In a December 22, 2009 Memorandum Opinion, the Court granted Batzli's Motion for a Jury Trial on the breach of contract claim and held that MLM's declaratory judgment claims would be decided after the trial on Batzli's counterclaim for breach of contract.

On March 1, 2010, the Court began a two day jury trial on Batzli's counterclaim in which he asserted that MLM's denial of coverage constituted a breach of its obligations under the insurance contract. Batzli's main contention was that he complied with the notice provision of his insurance policy and consequently, MLM had a duty to defend him against a malpractice claim filed by Mr. Chasen. Batzli steadfastly denied knowledge of facts which could reasonably support a claim until he received a copy of the lawsuit filed in Henrico County. To support this argument, Batzli produced detailed exhibits and witness testimony regarding the events surrounding his representation of Mr. Chasen. In essence, Batzli maintained that his client never revealed any intention to file a claim

against him. In fact, Chasen, after acknowledging satisfaction with the overall Agreement, rejected Batzli's recommendation that he file an action to set aside the property settlement agreement.

MLM countered that irrespective of his client's intentions, Batzli had sufficient knowledge of Mr. Chasen's potential malpractice claim to trigger the notification requirements under the insurance policy in 2006. MLM made two oral motions at trial for judgment as a matter of law, which the Court denied. "The determination of whether notice was given immediately, within a reasonable time, or as soon as practicable is usually a question for the jury." *Mason & Dixon Lines, Inc. v. U.S. Cas. Co.*, 199 Va. 221, 225, 98 S.E.2d 702, 705 (1957). The jury resolved the coverage issue in Batzli's favor.

## II. ANALYSIS

### A.

"The standard of review for granting a motion for judgment as a matter of law is whether the evidence is so substantial or conclusive that any contrary verdict would necessarily be based on speculation or conjecture." *Gairola v. Virginia Dep't of Gen. Servs.*, 753 F.2d 1281, 1285 (4th Cir. 1985). In other words, "[a] trial court may grant judgment as a matter of law when it 'finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for' the non-moving party." *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 292 (4th Cir. 2009) (citing Fed. R. Civ. P. 50(a)(1)). "A court, however, may

not disturb the verdict where there was sufficient evidence for a reasonable jury to find in the non-movant's favor." *Id.* "A trial court may not appropriately enter [JMOL] unless it concludes, after consideration of the record as a whole in the light most favorable to the non-movant, that the evidence presented supports only one reasonable verdict, in favor of the moving party." *Id.* (citing *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 458 (4th Cir. 1989)).

B.

MLM raises three grounds upon which this Court should grant its motion for judgment as a matter of law. First, it argues that Batzli failed to prove a *prima facie* case for breach of contract by not showing that his damages, in the form of attorneys' fees, were reasonable.[6] Second, MLM contends that Batzli's failure to plead nominal damages bars proof of a *prima facie* case on that theory. Third, and most importantly, MLM insists that Batzli failed as a matter of law to prove coverage under the terms of the Policy. This Court will analyze each issue in turn.

To prove a claim for breach of a contract in Virginia, a plaintiff must demonstrate: "(1) a legal obligation of a defendant to the plaintiff, (2) a violation or breach of that right or duty, and (3) a consequential injury or damage to the plaintiff." *Westminster Inv. Corp. v. Lamps Unlimited*, 237 Va. 543, 546, 379 S.E.2d 316, 317 (Va. 1989) [internal

---

[6] Additionally, MLM's Motion contends that by not proving the reasonableness of the attorney's fees, Batzli failed to prove the necessary element of proximate cause. To prove reasonableness, MLM insists the same standard exists between a duty to defend case and any case where the party requests an award of attorneys' fees.

7

citations omitted]. "Proof of damages is an essential element of a breach of contract claim, and failure to prove that element warrants dismissal of the claim." *Sunrise Continuing Care, LLC v. Wright*, 277 Va. 148, 156, 671 S.E.2d 132, 136 (Va. 2009). "It is generally held that where a breach of contract has forced the plaintiff to maintain or defend a suit with a third person, he may recover the counsel fees incurred by him in the former suit provided they are reasonable in amount and reasonably incurred." *Hiss v. Friedberg*, 201 Va. 572, 577, 112 S.E.2d 871, 876 (Va. 1960).

In MLM's first ground for judgment as a matter of law, it contends Batzli failed to prove the reasonableness of his damages. MLM argues that the only evidence of damages provided at trial was Batzli's testimony concerning the $8400 in attorneys' fees he expended in defending the Chasen Complaint. This, MLM maintains, is insufficient to show the attorneys' fees were either reasonably calculated or reasonably incurred.

On the other hand, Batzli argues there was sufficient direct and circumstantial evidence to support his claim for damages. In particular, Batzli insists that MLM's failure to challenge the reasonableness or necessity of the attorneys' fees at trial precludes them from doing so at this stage of the litigation. Because $8400 was both *per se* reasonable and within the province of the jury to decide, Batzli argues he provided sufficient evidence to prove the reasonableness of his attorneys' fees.

On this first ground, the Court must side with MLM. As cited in *Hiss*, to recover attorneys' fees when a "breach of contract has forced the plaintiff to maintain or defend a

suit with a third person," the damages must be "reasonable in amount and reasonably incurred." *Hiss*, 201 Va. at 577. This Court finds insufficient evidence in the record to support such a finding in this case. Batzli's failure to provide evidence of the reasonableness of the fees, such as the nature of the services performed, the length of such services, and the applicable rates for such representation, left the jury with insufficient evidence to justify the damages awarded. For this reason, the Court must set aside the jury's $8400 award for damages.

Batzli's failure to prove actual damages, however, is not dispositive. When "no evidence is given of any particular amount of loss, [the law] declares the right by awarding what it terms 'nominal damages.'" *News Leader Co. v. Kocen*, 173 Va. 95, 107-08, 3 S.E.2d 385, 390-91 (1939). "Nominal damages are those recoverable where a legal right is to be vindicated against an invasion that has produced no actual present loss of any kind or where, from the nature of the case some injury has been done the amount of which the proof fails to show." *Id.* at 108. In the case of the breach of a valid and binding contract, the law infers nominal damages. *Orebaugh v. Antonious*, 190 Va. 829, 834, 58 S.E.2d 873, 875.

In its second ground for judgment as a matter of law, MLM argues that Batzli cannot claim nominal damages because they neither pled or sought them and the jury did not award them. Morever, MLM insists as a matter of law that nominal damages are only available when there is no evidence of actual damages provided to the court. Batzli

disagrees and maintains that nominal damages are not a separate right of action that must be plead and proven. Similarly, Batzli asserts that when a breach of contract is proven by the evidence, a court can infer nominal damages when actual damages are not adequately established.

After a thorough review of Virginia law on contract damages, this Court must conclude that nominal damages are appropriate in this case. MLM provides no persuasive authority that nominal damages must be specifically plead or that a court is foreclosed from inferring such damages under the facts at hand.[7] This Court may infer nominal damages when "from the nature of the case some injury has been done the amount of which the proof fails to show." *News Leader Co.*, 173 Va. at 108. Therefore, Batzli's failure to prove actual damages allows this Court to subsequently award nominal damages, satisfying the damage element of Batzli's claim.[8] Consequently, this Court finds a legally sufficient evidentiary basis exists to support Batzli's *prima facie* case for breach of contract.

Lastly, MLM argues that Batzli's notice of a potential claim for damages was untimely as a matter of law. "In determining the reasonableness of an insurer's notice, the Virginia Supreme Court follows an objective standard, requiring that an insurer be

---

[7] Also of importance, Batzli proposed at the end of all evidence, and this Court granted over MLM's objection, a nominal damages instruction to the jury.

[8] In his final argument, counsel for Batzli specifically argued to the jury that, in the alternative, nominal damages were appropriate in this case.

notified whenever it should reasonably appear to the insured that the policy may be implicated." *Penn-America Ins. Co. v. Mapp*, 461 F. Supp. 2d 442, 453 (E.D. Va. 2006). "Failure to give timely notice will not be excused when the insured subjectively concludes that coverage under the policy will not be implicated or is ignorant of the notice provisions." *Dan River, Inc. v. Commercial Union Ins. Co.*, 227 Va. 485, 489, 317 S.E.2d 485 (1984). "Such a policy provision requires the insurer to be notified whenever, from an objective standpoint, it should reasonably appear to the insured that the policy may be involved." *Id.* at 489. The policy provisions regarding a condition precedent involve a determination of whether it was reasonable for an insured to anticipate or have any reason to anticipate that an insured's error, made before the inception of the policy, would result in a claim under the policy. *Commerical Underwriters Ins. Co. v. Hunt & Calderone, P.C.*, 261 Va. 38, 43, 540 S.E.2d 491, 494 (2001).

By following the objective standard for notice in Virginia and squaring the operative language of the insurance contract against the evidence presented at trial, this Court must find that a reasonable jury had a legally sufficient evidentiary basis to reach a verdict for Batzli. *Dotson*, 558 F.3d at 292.

Turning first to the Policy itself, it included coverage for any prior act, error, or omission by the insured of which he had no knowledge of facts that could reasonably support a claim.[9] In other words, this meant that any act, error, or omission committed by

---

[9] As already mentioned, a claim is defined in the Policy as "[a]n act, error or omission by any INSURED which has not resulted in a demand for DAMAGES but which an INSURED

11

Batzli, which he knew or reasonably should have known would support a demand for damages, required him to give immediate notice. Furthermore, the relevant Policy language eliminated any necessity to evaluate the likelihood of a formal lawsuit being filed against the insured in determining whether notice was required. Instead, Batzli had an affirmative obligation to notify MLM when he became aware of any act or error on his part, "which has not resulted in a demand for damages but which" could reasonably support a demand for damages against him—a much more expansive reporting criteria.

Notwithstanding this heightened reporting criteria, this Court cannot say that sufficient evidence did not exist to substantiate the jury's verdict. Throughout the trial, Batzli provided reasonable justification as to why he lacked the objective knowledge of facts that could support a demand for damages. From the outset, through various sources, Batzli's counsel was able to provide significant proof that Mrs. Chasen would have never given up her interest in Chasen Properties, LLC, making Mr. Chasen's settlement objective of maintaining sole control of Chasen Properties, LLC simply unattainable. This uncontested fact, coupled with Chasen's apparent overall satisfaction with the other favorable terms of the property settlement Agreement, provided a legally sufficient basis for the jury to conclude that Batzli did not reasonably believe that his drafting error could support a claim for damages.

---

knows or reasonably should know, would support such a demand."

In addition, Batzli demonstrated to the jury that it was his client's own informed decision that dictated the litigation strategy.[10] After the drafting error was discovered and when given the opportunity to set aside the Agreement and restart negotiations, Mr. Chasen elected to press ahead with the costly and unsuccessful Motion to Correct Scrivener's Error and its subsequent appeal. Thus, Batzli provided the jury with sufficient evidence to support the conclusion that he was merely following his clients instructions. Furthermore, Batzli maintained that his client's conscious decision to avoid setting aside the Agreement, based in large part on its favorable distribution of assets,[11] foreclosed any realistic possibility of recovering future damages.

Moreover, Mr. Chasen testified that he never indicated to Batzli that he might actually pursue a claim against him or his firm. Batzli's impressions were further bolstered by evidence of prompt payment of attorneys' fees by Mr. Chasen, and perhaps most importantly a continued positive attorney-client relationship. Collectively viewed, a reasonable trier of fact could conclude that the circumstances were inconsistent with a client contemplating a future demand for damages.[12] Therefore, this Court "may not

---

[10] Both the Circuit Court for the City of Richmond and the Court of Appeals of Virginia held there was no evidence to support a meeting of the minds regarding the transfer of Chasen Properties, LLC, from Mrs. Chasen to Mr. Chasen. Setting aside the Agreement was clearly a viable legal option.

[11] By not setting aside the Agreement, Mr. Chasen retained over $4 million of an approximately $6 million estate.

[12] Although MLM provided evidence in emails and letters from Mr. Chasen to Batzli expressing a growing level of dissatisfaction, this Court cannot say that this "evidence is so substantial or conclusive that any contrary verdict would necessarily be based on speculation or

13

disturb the verdict where there was sufficient evidence for a reasonable jury to find in the non-movant's favor." *Dotson*, 558 F.3d at 292.

### III. CONCLUSION

For the foregoing reasons, the Court will deny MLM's Motion for Judgment as a Matter of Law and award Batzli nominal damages in the sum of one-dollar ($1.00).

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

ENTERED this 18th day of May, 2010.

---

conjecture." *Gairola*, 753 F.2d at 1285.